# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL ANN NARBAITZ,<br><br>               Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. 1:18-cv-00285-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 4, 5).

      At a hearing on April 4, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

1

**A. The ALJ's Treatment of Plaintiff's Subjective Symptom Testimony**

Plaintiff challenges the Administrative Law Judge's ("ALJ") evaluation of Plaintiff's testimony. As to subjective testimony, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear and convincing reasons.

The ALJ provided the following reasons for the weight given to Plaintiff's subjective symptom testimony:

> Persuasiveness is reduced by several factors. For example, persuasiveness is reduced by the fact that despite her alleged impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. As discussed previously, she reported she was able to do most of her activities of daily living except for gardening. Ex. 20F/8. She reported significant travel and vacation, including a trip to Japan and traveling for months at a time to her second home in Montana. Although the claimant's activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. The claimant's ability to participate in such activities undermined the persuasiveness of the claimant's allegations of disabling functional limitations. Moreover, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. In

> short, it appears the limited range of daily activities is not due to any established impairment.
>
> Finally, the persuasiveness of the claimant's allegations regarding the severity of the symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The medical evidence indicates the claimant received routine conservative treatment for the impairments. Moreover, the positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein. Thus, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, to the extent they are inconsistent with the above residual functional capacity assessment, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(A.R. 19-20).

Admittedly, much of this reasoning appears to be boilerplate. It repeatedly states conclusions. It refers generally to the record and the decision. It only cites to only one page in the record. Furthermore, its opinion that the limitations might be due to some unknown cause is speculative and wholly without support in the record.

Nevertheless, the Court will affirm the decision because Plaintiff's activities as well as low levels of reported pain do not fit with her description of her symptoms. The one record that the ALJ cites is a medical report for Plaintiff from March 15, 2016 reporting that Plaintiff has a pain level of 2 (out of 10) with pain medications, and also that "Patient is able to do most of her ADLs except for gardening." (A.R. 550). While this is the only specific record cited, it is not an aberration. *See, e.g.* A.R. 327 ("She next presented with pain scale of 2/10. W/meds. . . .She is leaving for Montana around the 8th of October and will be back towards the end of the month and then taking begin [sic] go to the northern coast."); A.R. 576 ("She plans to travel again for the next several months."); A.R. 543 ("Patient's pain score is a 2 with medications . . . Patient is leaving to go to Montana for vacation and so has asked for 3 months prescriptions."); A.R. 251 ("The patient reported that overall she is doing quite well. She went to Japan for 2 weeks or so and had a great time. . . . Overall, she feels good. . . . I think overall she is doing great."); A.R. 546 ("She is so happy with the results of the injection that she wants to hold off on anything like that [hip replacement]. Patient is leaving tomorrow to Montana for 2 weeks and then will be back

and will be leaving again and be gone for the months of I believe she said July and August. Patient has pain level of 2 today with medication patient is able to do her own ADLs without assistance."). These reports are not consistent with Plaintiff's testimony that she cannot work because "I have too much pain." (A.R. 39).

The Court finds that, in light of this record, the ALJ's reasons regarding Plaintiff's subjective symptoms are sufficiently specific, clear and convincing.

### B. ALJ's Weighing of Opinion by Dr. Rhoades, Plaintiff's Treating Physician

Plaintiff also challenges the decision of the ALJ on the ground that she improperly gave little weight to the opinion of the treating physician, Dr. Rhoades. The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Dr. Rhoades' opinion is contradicted by non-examining State Disability Determination Services physicians. Thus, this Court examines whether the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Rhoades' opinions.

The ALJ gave the following reasons for the weight given to Dr. Rhoades' opinions:

In January 2015, Dr. Rhoades reported the claimant presented with ongoing lower

> back pain primarily on the right side extending down to her right leg into the hip. Ex. 13F/3. Her pain had increased lately and she requested SI joint triple block. She reported she was notified by her work to come back off leave of absence and try to work at a job, but the claimant reported she'd been unable to do so and would continue on leave of absence. However, she was responding well to her medications, which did manage her pain for the most part. She also had a history of injections, which she reported had helped a lot and allowed her medications to work more efficiently, although pain was allegedly increased with prolonged standing, sitting, walking, or bending. Dr. Rhoades' evaluation report noted the claimant presented with pain scale of 3/10 with medications and 7/10 without medications. Complaints of anxiety were made, but note no treatment for this condition. Physical examination of the lower extremities revealed some bilateral valgus deformity and swelling, as well as bilateral tender joint line and positive McMurray's test. Spine showed tenderness in the lumbar, as well as tenderness at the facet joint and decreased flexion and decreased extension and lateral bending. However, only the following were diagnosed: lumbago, low back pain in foot/leg/arm/finger; hip/pelvic pain; myofascial pain syndrome/fibromyalgia. Treatment was to continue on a conservative outpatient basis, primarily consisting of continuation of her current medication regimen and recommendation of right SI block. However, despite these evaluation findings, Dr. Rhoades noted the claimant was unable to return to work due to pain levels. Ex. 13F/2-4. This opinion is not given significant weight because it lacks analysis or explanation and is inconsistent with the longitudinal medical evidence of record and with the claimant's admitted activities of daily living, discussed above.
>
> . . .
>
> June 2015 physical examination found no clubbing or edema in the extremities. Ex. 18F/14. Treating physician Dr. Rhoades completed a medical source statement this month. Ex. 14F. Dr. Rhoades reported treating the claimant for approximately 10 years every 1-2 months and confirmed diagnoses of lumbar radiculopathy, sacroiliac joint, and knee osteoarthritis. Clinical findings included positive MRI and lumbar spondylosis. Symptoms and signs included back pain radiating down the left leg in L5 distribution and knee pain. Dr. Rhoades opined the claimant's impairments restricted her to significant less than even sedentary exertional activities and that she would require numerous other postural, environmental and manipulative limitations. . . . In addition, Dr. Rhoades opined the claimant's current diagnoses had caused these functional limitations since 2005 and that she would likely be absent from work more than 4 times per month. The undersigned gives this opinion little weight because it is inconsistent with the treatment notes showing relatively low pain levels and routine treatment, discussed throughout this decision.

(A.R. 21-22).

While these paragraphs largely summarize Dr. Rhoades' notes, rather than explain the basis for the weight given to Dr. Rhoades' conclusions, the reasons that are given are sufficiently specific and legitimate and supported by substantial evidence. As discussed above, Plaintiff's admitted activities of daily living do not fit with the restrictions given by Dr. Rhoades. Moreover,

as described above, Plaintiff's pain appears to be largely responsive to medication. Finally, Plaintiff worked for almost nine years after Dr. Rhoades' says her functional limitations began.

### C. Conclusion

Thus, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **April 5, 2019**  /s/ Eric P. Groig
UNITED STATES MAGISTRATE JUDGE